Yellow Cab Company of Pittsburgh, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued May 9, 1985, before Judges DOYLE and COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Thomas M. Fallert,* with him, *Richard S. Dorfzaun, Dickie, McCamey & Chilcote, P.C.,* for petitioner.

*Robert Knickerbocker Smith, Jr.,* Assistant Counsel, with him, *Kenneth E. Nicely,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE DOYLE, November 26, 1985:

Petitioner, Yellow Cab Company of Pittsburgh (Yellow Cab), appeals to this Court from an order of the Respondent, Pennsylvania Public Utility Commission (P.U.C.), which dismissed three consolidated complaints against Amram Enterprises, Ltd. (Amram) for lack of jurisdiction.

This matter comes to us after rather lengthy and complex proceedings before the P.U.C. Although the factual development is not complex, a detailed history of the proceedings may facilitate an understanding of the case.

On May 14, 1982, Skyline Motors Air Cargo, Inc. (Skyline) filed a complaint with the P.U.C. alleging

that Amram had violated Section 1102 of the Public Utility Code, 66 Pa. C. S. §1102, by transporting delayed or misrouted baggage from the Greater Pittsburgh International Airport to points which were wholly within the state but which were nevertheless territories *other* than those authorized by its certificate of public convenience. On June 23, 1982, the P.U.C. filed a complaint on its own motion, making the same allegations. A combined hearing on these complaints was held before Administrative Law Judge (A.L.J.) Nemec on October 1, 1982. On February 2, 1983, A.L.J. Nemec issued his initial decision sustaining the complaints. Amram was ordered to cease and desist from its illegal practices and was fined $1,050.00. Exceptions were filed by both Amram and the P.U.C., the latter's directed solely to the amount of the fine imposed. On April 5, 1983, A.L.J. Nemec issued a ruling sustaining the P.U.C.'s exceptions and raising the fine against Amram to $4,200.00. Amram's exceptions were dismissed in their entirety, and on April 19, 1983, Amram appealed to the P.U.C. from the ruling on exceptions. On June 7, 1983, the P.U.C. entered an order adopting the ruling of the A.L.J.

While these proceedings were taking place, on October 7, 1982, a date subsequent to the consolidated hearing on the above described complaints, but prior to any decision by the A.L.J., Yellow Cab also filed a complaint against Amram alleging similar violations of the Public Utility Code. Amram answered this complaint and filed new matter requesting consolidation with the prior complaints of Skyline and the P.U.C. for purposes of briefing and argument. Yellow Cab agreed to the consolidation of issues but requested a separate hearing. A hearing was held on January 27, 1983, and an initial decision was issued by A.L.J. Nemec on May 5, 1983, again ordering

Amram to cease and desist from further violations. No exceptions were filed and on June 13, 1983, this initial decision became final by operation of law.

Throughout all of the above proceedings, Amram admitted that it had engaged in the transportation of baggage complained of, but consistently maintained that, pursuant to the 1980 amendments to Section 10526(a)(8)(B) of the Interstate Commerce Act, 49 U.S.C. §10526(a)(8)(B) (Motor Carrier Act of 1980), such transportation had been transformed from an *intrastate* status, subject to the jurisdiction of the P.U.C., to an *interstate* status. Amram's argument was based primarily upon a passage from the Motor Carrier Act of 1980, which exempts from the jurisdiction of the Interstate Commerce Commission (I.C.C.) the following operations:

> [T]ransportation of property *(including baggage)* by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier or (to the extent so agreed by the United States and approved by the Civil Aeronautics Board or its successor agency) by a foreign air carrier. . . .

49 U.S.C. §10526(a)(8)(B) (emphasis added). Amram argues that this passage, although providing an exemption from *regulation* by the I.C.C., nevertheless indicates a Congressional intent to give the transportation described therein an interstate status, and thus remove it from the jurisdiction of the states as well; in other words, an intent to deregulate the transportation entirely.

The P.U.C. initially rejected Amram's argument for several reasons, including the issuance on January 6, 1983, of an opinion by the I.C.C. review board which purported to sustain the I.C.C.'s 1971 decision in *Fourmen Delivery Service, Inc., Declaratory Order,*

112 M.C.C. 866 (1971). *Fourmen* established that the motor transportation of delayed, misplaced or misrouted air baggage, between points within a single state, constituted intrastate commerce. As the P.U.C. also noted, the Motor Carrier Act of 1980 referred only to baggage which was in "continuous movement," and the *Fourmen* opinion was based, in part, on a decision that baggage which was originally intended to accompany a passenger to his destination is *not* in continuous movement but rather comes to rest at the destination airport, at which time the interstate movement, if any, of such baggage is completed. The P.U.C. also indicated its reliance on legislative history which clearly indicated that Congress specifically intended to decrease federal involvement with air cargo transportation and did not intend to regulate any items which were not subject to federal regulation prior to the passage of the Motor Carrier Act of 1980.

In April of 1983, however, the I.C.C. expressly overruled its *Fourmen* decision and specifically held that the motor transportation between points within a single state of delayed, misplaced or misrouted baggage which was originally intended to accompany a passenger, when such baggage has had an immediately prior movement by air from points outside such state, is interstate in nature but exempt from the jurisdiction of the I.C.C. pursuant to the provisions of the Motor Carrier Act of 1980. *Package Express Services, Ltd., Petition for Declaratory Order,* 133 M.C.C. 124 (1983). On June 21, 1983, Amram petitioned the P.U.C. to reopen the above-summarized proceedings, on the basis that the *Package Express* opinion constituted after acquired information. Determining that such action would be in the public interest, the P.U.C. granted the petition. Additional hearings on the matter were held in January of 1984, and on March 7, 1984, A.L.J. NEMEC issued a further initial decision on

reopened proceedings reversing his prior decision and dismissing all three complaints against Amram for lack of jurisdiction. Both Skyline and Yellow Cab filed exceptions, which were denied by A.L.J. NEMEC on April 24, 1984. Skyline and Yellow Cab then appealed to the P.U.C., which affirmed A.L.J. NEMEC's further initial decision on June 28, 1984. On July 27, 1984, Yellow Cab filed its petition for review in this Court.

Yellow Cab now argues that the *Package Express* decision was not binding on the P.U.C. and is not binding on this Court; that the Motor Carrier Act of 1980 does not indicate any Congressional intent to preempt jurisdiction of the P.U.C.; and that if we so determine that the transportation of delayed, misplaced or misrouted baggage is not under the jurisdiction of the P.U.C., then such transportation will go unregulated, which would be against the best interests of the public.

The *Package Express* decision was thoroughly analyzed by A.L.J. NEMEC in his further initial decision. He stated therein that "[w]hile [Yellow Cab] may be correct that this Commission is not bound by decisions of the I.C.C., the Commission has certainly found the I.C.C.'s positions to be persuasive in the past. Further, absent any I.C.C. decisions, I would find the argument set forth [in *Package Express* to be] very persuasive on the question of whether the shipments in question are interstate in nature."

In *Package Express,* the I.C.C. determined that the *Fourmen* decision, although applying a proper test, had incorrectly concluded that baggage which was originally intended to accompany a passenger was not in continuous movement. Concluding that the motor transportation of such baggage, even between points within a single state, did in fact constitute interstate commerce, the I.C.C. stated:

In finding that the baggage 'came to rest' at the destination airport, the Commission focused on both the airline's and the passenger's intentions. Employing the same test, we reach a different result. An airline passenger expects that his baggage will be tendered to him at his destination airport so that he may transport it with him to his ultimate destination. The fixed and persistent intent of the passenger is that his baggage will move through to his ultimate destination. The delay, misplacement, or misrouting of the baggage by the airline should not be viewed as altering the intention or as causing the baggage to 'come to rest.' An air passenger expects that the airline be responsible for his baggage, and if the baggage is not tendered to the traveler at his destination, he expects that the air carrier will make all arrangements and payment for the surface transportation of that baggage to his ultimate destination. In the event the previous accompanied baggage becomes unaccompanied baggage by reason of delay, misplacement or misrouting, the airline takes on the status of a shipper in arranging for the continued movement of the baggage to the passenger's ultimate destination. The delayed, misplaced, and misrouted baggage does not come to rest until it is delivered to the passenger which it originally had accompanied.

*Package Express,* 133 M.C.C. at 127.

We, of course, also recognize the non-binding nature of a decision of the I.C.C.; however, we too consider it to be highly persuasive authority on issues relating to interstate commerce, and where, as here, it has presented a logical stance, we will follow it.

We note, in addition, that Section 10525 of the Motor Carrier Act of 1980, 49 U.S.C. §10525, provides a separate exception for transportation which is entirely within one state. This section thus exempts from the jurisdiction of the I.C.C. transportation which would be subject to regulation by the P.U.C., because it is entirely within the Commonwealth. See Section 1101 of the Public Utility Code, 66 Pa. C. S. §1101. Section 10526 of the Motor Carrier Act of 1980, therefore, must logically be interpreted as dealing with transportation which was not considered by Congress to be entirely within one state, but that was, on the contrary, considered to be *interstate* in nature.

With respect to the preemption issue, the United States Supreme Court had held that where Congress has unmistakably ordained that its enactments alone are to regulate a part of commerce, state laws regulating that aspect of commerce must fall. *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977). This result is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. *Id.* Congressional enactments that do not exclude all state legislation in the same field nevertheless override state laws with which they are in conflict. *Id.* at 525-26. In this case, the Motor Carrier Act of 1980, as interpreted in the *Package Express* decision, includes the word "baggage" in Section 10526(a)(8)(B) for the specific purpose of redefining the nature of misrouted baggage and consequently altering the jurisdictional status of such baggage from a *regulated* commodity of *intrastate* commerce to an *unregulated* commodity of *interstate* commerce. When the words of a statute are not explicit, legislative intent may often be determined by consideration of the statute's contemporaneous legislative history. *See* Section

1921 (c)(7) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(c)(7). As the P.U.C. has pointed out in its brief, the legislative history from the Congressional Committee on Public Works and Transportation which accompanied the Motor Carrier Act of 1980 includes the following statement:

Under the current law, certain types of transportation are exempt from regulation by the Interstate Commerce Commission. This section of the bill expands the list of motor carrier transportation exempt from economic regulation. It does not regulate any items now exempt.

H.R. No. 96-1069, 96 Cong. 2d Sess. 31 (1980).

An expression by Congress of intent to *deregulate* an area of commerce previously regulated by the states is just as much in conflict with the state regulation, and hence the state's jurisdiction, as would be an actual conflicting federal regulation.

Finally, addressing Yellow Cab's public policy concerns, we note that such concerns must be left to the legislature. The House Report quoted above further states that "extending the exemption will allow maximum flexability in dealing with air cargo which generally requires specialized and expedited handling." H.R. No. 96-1069, 96th Cong. 2d Sess. 31 (1980). Thus, Congress had indicated that it does indeed have the public's best interests in mind.

We affirm the decision of the P.U.C.

ORDER

Now, November 26, 1985, the Order of the Pennsylvania Public Utility Commission, in the above captioned matter, entered June 28, 1984, is hereby affirmed.